UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES M. WILLIAMS,

          Plaintiff,

v.                                                 Case No.  5:07-cv-110-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

          Defendant.
_____/

## ORDER

Pending before the Court is Plaintiff's Application for Attorney's Fees Pursuant to the Equal Access to Justice Act. (Doc. 21.) The Commissioner has filed a response in opposition. (Doc. 23.) Accordingly, this matter is ripe for review. For the reasons discussed below, Plaintiff's Application for Attorney's Fees Pursuant to the Equal Access to Justice Act is due to be **GRANTED** other than a deduction of 0.6 hours for attorney's fees incurred in 2008.

## DISCUSSION

Plaintiff requests an award of attorney's fees in the amount of $3,475.02. The total for attorney services is confirmed by the affidavit of attorney's time attached to the motion. Plaintiff asserts that he is the prevailing party in this litigation, and that the Commissioner's position in the underlying action was not substantially justified. Plaintiff

also states that Plaintiff's net worth at the time the proceeding was filed was less than two million dollars.[1] On September 30, 2008, the Court entered an Order reversing and remanding this cause back to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). (Doc. 17.) On the same day, the Clerk entered judgment. (Doc. 18.) On October 14, 2008, Plaintiff timely filed his petition for attorney's fees.[2]

The Commissioner responded to Plaintiff's petition for EAJA fees on October 29, 2008, objecting to the petition on two grounds. (Doc. 23.) First, the Commissioner argues that the 1.2 hours Plaintiff's counsel reportedly spent in 2008 reviewing the Court's Order reversing and remanding the decision of the Commissioner were excessive and unreasonable and, therefore, should be reduced by 0.6 hours. Secondly, the Commissioner also objects to the hourly rate requested for the hours expended in 2008 urging the Court to adopt the reasoning reflected in *Grant v. Astrue*—a case recently decided in the Middle District of Florida—which held that a rate in excess of $170.00 for hours expended in 2008 is excessive.[3]

---

[1] Under the EAJA, a claimant is eligible for an attorney fee award where: (1) the claimant is a prevailing party in a non-tort suit involving the United States; (2) the Government's position was not substantially justified; (3) the claimant filed a timely application for attorney's fees; (4) the claimant had a net worth of less than $2 million at the time the complaint was filed; and (5) there are no special circumstances which would make the award of fees unjust. 28 U.S.C. § 2412(d).

[2] (Doc. 21.) Plaintiff must file an application for fees and other expenses within thirty (30) days of the "final judgment" in the action, which is defined as a judgment that is "final and not appealable." 28 U.S.C. § 2412(d)(1)(B), (d)(2)(G). According to the Federal Rules of Appellate Procedure, the judgment becomes "final" upon the expiration of the sixty (60) day period following judgment within which the Commissioner may appeal. *See* FED. R. APP. P. 4(a)(1)(B).

[3] *See* Grant v. Astrue, No. 8:03-cv-2397-T-TGW, 2008 WL 4534027, at *2 (M.D. Fla. Oct. 6, 2008) (declining to award more than $165.00 per hour for work done in 2008).

With respect to Commissioner's challenge concerning the number of hours claimed by Plaintiff, the Court agrees that the expenditure of 1.2 hours to review the Court's remand order was unreasonable and excessive. The EAJA provides the Court with the discretion to adjust the award of attorney's fees if the requested amount is unreasonable.[4] Accordingly, Plaintiff's claimed hours for 2008 shall be reduced by 0.6 hours.

With regard to the Commissioner's request that the Court follow *Grant*, Judge Wilson's rationale in *Grant* for reducing the hourly rate was that an hourly rate of more than $170 was "patently beyond the bounds of reason" because it was higher than the maximum rate paid for the "far more demanding and challenging" work of criminal defense attorneys in capital cases in 2008. In *Grant*, the Court justified its decision not to award fees in excess of $165 per hour by comparing the fees awarded pursuant to the EAJA fee-shifting statute to the compensation of court appointed attorneys in capital cases pursuant to the Criminal Justice Act ("CJA"). While there is an appealing and common sense logic to Judge Wilson's reasoning in *Grant,* in the Court's view there is a fundamental difference between the rationale for awarding fees under the EAJA and for the fee cap under the Criminal Justice Act.

The EAJA on the one hand is a fee-shifting statute intended to encourage private litigation implementing important public policies. Its express provision granting courts the discretion to implement upward adjustments to account for inflation demonstrates the Congressional intent that the EAJA's "maximum" statutory rates should be—subject

---

[4] 28 U.S.C. § 2412(b).

to the Court's discretion—adjusted over time. The EAJA is, therefore, designed to provide private individuals with "equal access" to the judicial system where it is necessary to enforce important rights against the government and by its express terms is designed to adjust over time consistent with increased costs of living. It is not, however, designed to be pegged to a rate equal to the prevailing market rate.

This view is reflected in the process for determining the hourly rate to be applied to fees requested under the EALA. Under the EAJA the Court does not simply determine the appropriate market rate but rather engages in a two-step process.[5] The first step in the analysis is to determine the prevailing market rate for the kind and quality of services furnished.[6] The second step - which is necessary only if the prevailing market rate is greater than the $125.00/hr statutory ceiling - is to determine whether the court should adjust the hourly rate upward from the ceiling to take into account an increase in the cost of living or a special factor.[7]

As such, even if the Court was to follow the reasoning of *Grant* - and compare the hourly rates between a criminal defense lawyer appointed under the CJA in a capital case with the hourly rate of a lawyer representing a claimant in a Social Security case - the comparison is only relevant to whether the market rate is more than $125.00 per hour and not to what should be the cap for the hourly rate. The cap already has been set by Congress at the rate at $125.00 per hour, subject to an upward adjustment by the Court to account for the increase in the cost of living. This adjustment, however, is

---

[5] Gates v. Barnhart, 325 F. Supp. 2d 1342, 1345 (M.D. Fla. 2002)(*citing* Meyer at 1033-34).

[6] *Id.*

[7] *Id.*

based upon an index and is not based upon what the Court believes should be an appropriate hourly rate.

There is no serious dispute that the prevailing hourly rate for lawyers practicing in federal court - whether in capital criminal cases or any type of civil litigation - is well in excess of $125.00 per hour. Thus, under the EAJA once the Court determines that the market rate is more than $125.00 per hour the Court does not then need to determine what should be the cap for the hourly rate. Rather, the Court is only required to determine whether to adjust the rate based upon an increase in the cost of living index. This determination is purely a mathematical computation based upon the application of the appropriate cost of living index.

In sum, even assuming the $170.00 per hour cap on hourly rates for capital cases under the CJA was relevant for the purpose of determining the market rate, because the rate is well in excess of the EAJA statutory cap of $125.00, it is irrelevant to the mathematical calculation of the rate adjusted for inflation.

Secondly - and separate from the fact that the CJA rate is irrelevant to the second step in the EAJA analysis - the CJA rate is not an appropriate benchmark for determining the market rate for EAJA fees in the first place. The payment of fees under the Criminal Justice Act is designed to ensure that individuals charged with crimes are afforded their constitutional right to be represented by a lawyer. Thus, the purpose of the statute is entirely different from the EAJA. Moreover, the maximum rate set forth in the CJA was carefully considered and found to be "a reasonable basis upon which lawyers could carry out their profession's responsibility to accept court appointments . . . [despite being] below normal levels of compensation in legal practice." H.R. REP. NO.

5

88-864 (1963). Thus, the cap on the hourly rate set by Congress is not even a standard that is based upon the market rate for criminal defense lawyers. Rather, the cap on hourly rates under the CJA is ultimately a matter of public policy and such matters are best left to Congress.[8]

Accordingly, in the Court's view because the disparity in the hourly rates for payment of attorneys under the CJA and under the EAJA are based upon completely different policy considerations and entirely different purposes, and involve a different analytical framework, the Court declines to apply the reasoning of *Grant* to reduce Plaintiff's fee application. Therefore, Plaintiff's request for fees at an hourly rate of $171.77 to reflect an increase in the cost of living index for time incurred in 2008 is consistent with the EAJA and is the appropriate rate to be applied to attorney's fees for the calendar year 2008.[9]

For these reasons, other than the deduction of 0.6 hours for work completed in 2008, Plaintiff's Application for Attorney's Fees Pursuant to the Equal Access to Justice

---

[8] *See* Reeves v. Astrue, 526 F.3d 732, 738 (11th Cir. 2008) ("[P]olicy decisions are properly left to Congress, not the courts.") (citing Artuz v. Bennett, 531 U.S. 4, 10 (2000)).

[9] Plaintiff provided the Court with adequate evidence of the increased cost of living between 1996 (the last time the EAJA was amended) and 2008 and therefore is consistent with the calculation approved by this Court in Gates, 325 F. Supp. 2d at 1347-48.

Act (Doc. 21) is due to be **GRANTED**. Defendant is directed to remit to Plaintiff[10] the sum of **$3,371.96** for attorney's fees.[11]

  **IT IS SO ORDERED.**

  **DONE AND ORDERED** in Ocala, Florida, on November 25, 2008.

                    _/s/ Gary R. Jones_
                    GARY R. JONES
                   United States Magistrate Judge

Copies to:
  All Counsel

---

[10] Evidence that Plaintiff has assigned his rights to EAJA fees to his counsel was not included with Plaintiff's petition for attorney's fees. Accordingly, consistent with <u>Reeves v. Astrue</u>, the Court is directing that the fees be remitted to Plaintiff. 526 F.3d 732 (11th Cir. 2008).

[11] Plaintiff's petition requests a total of $438.01 for the hours worked in 2008. (2.55 hours - 0.6 hours = 1.95 hours) x $171.77/hour = $334.95. Therefore, Plaintiff's attorney's fees shall be reduced by $103.06 ($438.01 - $334.95 = $103.06).